<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, | Civ. No. 14-5806 (KM) (MAH) |
| Plaintiff, | OPINION |
| v. | |
| UNDERPASS ENTERPRISES INC., T/A/ THE HAREM; JONATHAN LLOYD; MELY LLOYD, | |
| Defendants. | |

   This is an action by an insurer, Atain Specialty Insurance Company, for a declaratory judgment. Currently in state court is an action (the "State Case") between the defendants here; Jonathan and Mely Lloyd are suing Underpass, the operator of a club known as "The Harem," for injuries received during an incident in The Harem's parking lot. Atain asserts that, pursuant to an "assault and battery" exclusion in a policy, it owes no duty to defend or indemnify its insured, The Harem. The Harem says there is an issue of fact as to whether the incident constituted an uncovered "assault" or a covered "accident." Now before the court is Atain's motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons stated herein, the motion will be denied.

**The Policy and the Assault Exclusion**

   The parties are in essential agreement about the relevant provisions in the insurance policy at issue. In effect at the time of the incident was Policy no.

1

CIP15167, having Atain as insurer and Underpass, t/a The Harem, as insured. (ECF no. 19-4) It obligates Atain to defend and indemnify The Harem as to a claim arising from an "occurrence" involving "bodily injury" or "property damage." An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The policy contains a Combined Coverage and Exclusion Endorsement. Paragraph IX (the "Assault Exclusion") reads as follows:

### IX. ASSAULT AND BATTERY EXCLUSION

This insurance does not apply under **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **COVERAGE B PERSONAL AND ADERTISING INJURY LIABILITY** arising from:

1. Assault and Battery committed by any insured, any employee of any Insured or any other person;

2. The failure to suppress or prevent Assault and Battery by any person in 1. above;

3. resulting from or allegedly related to the negligent hiring, supervision or training of any employee of the insured; or

4. Assault or Battery, whether or not caused by or arising out of negligent, reckless or wanton conduct of the Insured, the Insured's employees, patrons or other persons lawfully or otherwise on, at or near the premises owned or occupied by the Insured, or by any other person.

For the purposes of this exclusion, Assault and Battery includes, but is not limited to, the use of reasonable force or self-defense by any party, person, insured or employee of any insured.

(ECF no. 19-5 at 67–68)

### The State Case

This insurance action grows out of a personal injury lawsuit filed in state court by Jonathan Lloyd and Mely E. Lloyd against The Harem.[1] The allegations of the state complaint (ECF no. 19-2) may be summarized as follows.

---

[1] Jonathan A. Lloyd and Mely E. Lloyd v. Underpass Enterprises, Inc., t/a/ The Harem, Docket no. UNN-L-1503-14 (N.J. Super. Ct., Law Div., Union County).

2

The Harem is "an upscale restaurant and nude cabaret" located on Route 17 in Lodi, New Jersey. On March 23, 2013, Jonathan Lloyd was lawfully on the premises. There, he was injured by another person.

Count 1 alleges that The Harem was negligent in that it failed to maintain safe premises, and that as a result, Lloyd was "assaulted by a dangerous and unruly patron." Counts 2 and 3, which are similar, are asserted against "John Does," identified as an owner or agent, in addition to The Harem.

Count 4 names the prior defendants, including The Harem, but adds "John Doe Assailant." It alleges that Assailant "carelessly, negligently and recklessly came into contact with the Plaintiff" and injured him. Count 5, too, is asserted against all defendants, and it alleges that Assailant "assaulted, battered and attacked the Plaintiff."

Count 6 is a *per quod* claim by Jonathan Lloyd's spouse, Mely Lloyd. (Herein, references to "Lloyd" mean Jonathan, unless otherwise specified.)

An online check reveals that the state action remains pending.

**The Harem's Claim and Atain's Reservation of Rights**

On February 3, 2014, The Harem made a claim under the Policy for defense and indemnification. Atain disclaimed any responsibility for Counts 2 through 5 of the complaint, stating that they involved only uninsured "John Doe" defendants.[2] Atain stated that it would defend The Harem on Count 1 (negligence, asserted against The Harem) and 6 (*per quod* claim of spouse). That commitment, however, was subject to a reservation of rights. As most relevant here, Atain stated that, "if investigation and discovery reveals that under the Combined Coverage and Exclusion Endorsement, the section entitled 'IX. Assault and Battery Exclusion' is directly applicable, Atain reserves the right do [sic] deny this claim and all coverage for all claims of Counts One and Six of the Litigation Matter. If Atain does deny coverage pursuant to this

---

[2] That is not strictly accurate. The counts of the complaint are cumulative. Although Counts 2–5 add new allegations against new John Does, they are also brought against The Harem. And Counts 2 and 3 refer to John Does as the owner or employee/agent of The Harem.

3

reservation of rights, it will withdraw its defense counsel and The Harem will be responsible for the cost of defending the remainder of the matter." (ECF no. 19-6 at 9) The Harem accepted the offer of defense under a reservation of rights.

**This Action**

On September 18, 2014, Atain filed this federal action for a declaratory judgment that, under the Assault Exclusion, it is not bound (or is no longer bound) to defend or indemnify The Harem. (ECF no. 1) All defendants have answered. (ECF nos. 10, 14). The Harem has asserted crossclaims and counterclaims not directly relevant here. (ECF no 14)

**Discussion**

### A. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at

248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

### B. Issue of Fact as to Applicability of the Assault Exclusion

The only issue is whether the evidence conflicts as to whether Mr. Lloyd was the victim of an assault. If yes, the assault exclusion would apply; if no, not.

There is no judgment in the state action as of yet; Atain brought this action as a means of relieving itself of the expense of continuing to participate in the state action. Most urgent, then, is the duty to defend. As to that, I am guided by some well- established principles:

> "[T]he duty to defend comes into being when the complaint states a claim constituting a risk insured against." *Danek v. Hommer*, 28 N.J. Super. 68, 77, 100 A.2d 198 (App.Div.1953), *aff'd o.b.*, 15 N.J. 573, 105 A.2d 677 (1954). Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit. *Id.* 28 N.J. Super. at 76–77, 100 A.2d 198. If the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage. *Central Nat'l Ins. Co. v. Utica Nat'l Ins. Group*, 232 N.J.Super. 467, 470, 557 A.2d 693 (App. Div. 1989). When multiple alternatives causes of action are stated, the duty to defend will

5

continue until every covered claim is eliminated. *Mt. Hope Inn v. Travelers Indem. Co.*, 157 *N.J. Super.* 431, 440–41, 384 A.2d 1159 (Law Div. 1978).

*Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 173-74, 607 A.2d 1255, 1259 (1992)

In *Voorhees,* there was an issue as to whether the "occurrence" was a covered accident, or an intentional act. A teacher sued a parent based on public comments about the teacher's competence. If viewed as "intentional," or as a "personal" rather than "bodily" injury, there would not be coverage. The Court held, however, that the teacher's complaint, however vague or inartful, could be read as one for negligent infliction of emotional distress, resulting in physical symptoms. And its slim chances of success, said the Court, were irrelevant to the duty to defend.

At common law, assault and battery are intentional torts. "Common-law battery is an intentional tort involving the harmful or offensive touching of plaintiff's person without his consent." *Corradetti v. Sanitary Landfill, Inc.*, 912 F. Supp. 2d 156, 161 (D.N.J. 2012) (quoting *Caldwell v. KFC Corp.*, 958 F. Supp. 962, 970 (D.N.J. 1997)).[3] Lloyd's state complaint here surely pleads that the Assailant engaged in an intentional assault.

But does it plead *only* that the Assailant committed intentional assault? Not really. Count 4 alleges that Assailant "carelessly, negligently and recklessly came into contact with the Plaintiff" and injured him. Count 5 pleads in the alternative that the Assailant "assaulted, battered and attacked the Plaintiff." So, taking the *Voorhees* approach, I would hold that there is at least an issue of fact as to Atain's duty to defend.

I will, however, carry the analysis further to see if the record of the case presents an issue of fact as to the applicability of the Assault Exclusion. Here, too, *Voorhees* is suggestive. Deciding whether the occurrence (the allegedly tortious comments about the teacher) could be treated as an "accident," the

---

[3] Lloyd is surely suing for battery, not for the fear and apprehension that may technically constitute an assault. *See id.*

6

Court focused on the injuries, from the point of view of their source. Under that approach, unintended consequences of an intentional act are—or, more to the point here, could be interpreted by a fact finder as—not intentional. 128 N.J. at 181–82, 607 A.2d at 1263. Indeed, said *Voorhees*, even injury that was intended, if the extent of injury is unforeseen, could be treated as accidental, not intentional. *Voorhees* is not on point, but its approach is suggestive, and I take it as a guide in reviewing the record to determine if there is an issue of fact as to intentional assault.

Here, for example, is Lloyd's description of the incident in state court interrogatory answers:

> It was clear and cold, at roughly 1AM, on Saturday, March 23, 2013 at the Harem located at 100 State Rt 17 South, Lodi, NJ 07644 when the following occurred:
>
> - Inside, I saw my co-worker Sess (Cecil George) on the floor with another man fighting him.
> - Rather than split them up and keep one secure indoors until the other was gone from the property, the Harem personnel decided to throw both out into the parking lot at the same time.
> - Concerned for Sess (a brand new 1st time father) and hoping to keep the fight from resuming, I followed the two as they were escorted outside and called out for other co-workers to follow.
> - Other co-workers believed the staff would keep the two apart for a minute, making it safe to retrieve their coats before joining us.
> - As I began talking with Sess on the concrete walkway in front of the building, the attacker came charging across the parking lot toward Sess.
> - I stepped off the walkway to get between Sess and his attacker.
> - My next memory is from days later, in the hospital on IV
>
> Whether my head was slammed into the brick building, the concrete walkway, both, or some other combination, these actions and the danger that resulted were a result of the Harem's failure to keep its customers safe.

7

(ECF no. 19-5 at 3)

To be sure, this is *consistent with* assault. But that is not the only interpretation. Lloyd testified in depositions that he was not sure how or even whether he was assaulted, other than that he had tripped over the curb, inferably as a result of contact with the Assailant (later identified as a man named "Meg James"). (ECF no. 19-4 at 27) The police officer who came to the scene stated, probably on a hearsay basis, that Lloyd had "apparently tripped, falling backwards striking the back of his head" while attempting to break up a fight. (ECF no. 20-1 at 4)

Lloyd did not clearly remember actual physical contact with James. (ECF no. 21-1 at 32, 33) He was clear that James seemed to be directing his activity at Cecil, not at Lloyd himself. (ECF no. 21-1) (Q. ... this one gentlemen that was going to come, you believe, attack Cecil with you being right next to Cecil.... Is that correct? A. That's correct.") Lloyd always believed that James was charging at Cecil, not himself.

Even assuming that James knocked Lloyd down (Lloyd seemed to infer, if not remember, this), the behavior was not necessarily intentional or assaultive. The evidence is consistent with Lloyd's having negligently placed himself in harm's way, or with James's having negligently bumped him. James may not have intended to touch Lloyd at all.

Atain stresses that James must have intended to knock Lloyd down, in that these were "consequences [that were] certain or substantially certain to result from his act." (Atain Br. At 11, citing Restatement, Torts 2d § 8A (1965)). That, however, is a matter of factual interpretation. In short, the fact finder will be required to divine intent from a confused situation.

Should there be a judgment, summary or otherwise, in the state action, I might find myself bound by *res judicata*, but for the present I find there are unsettled issues of fact. That is not to say that Atain could not ultimately prevail, but those factual issues preclude summary judgment.

## CONCLUSION

For the foregoing reasons, the motion of the plaintiff, Atain Specialty Insurance Company, for summary judgment is denied. An appropriate order follows.

_____
KEVIN MCNULTY, U.S.D.J.

Date:  March 14, 2016